IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF KANSAS

ISABEL I. SPARKS, )
)
           Plaintiff, )
)
v. ) Case No 09-1001-WEB
)
JO-ANN STORES, INC., )
)
           Defendant. )

MEMORANDUM AND ORDER

Before the court is the Defendant's Motion for Summary Judgment (Doc. 23). Plaintiff filed a complaint alleging discrimination and termination based on age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq., and discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq.

I. Facts

1. Jo-Ann Stores is a fabric and crafts retailer, operating numerous Jo-Ann Fabric and Craft retail stores in various locations throughout the United States.[1] (Doc. 28, Pretrial Order).

2. Plaintiff worked for Jo-Ann Stores as a part-time Team Member in the Salina, Kansas store from August 8, 2003 until November 17, 2007. (Doc. 28, Pretrial Order).

3. Plaintiff was born in 1930. Plaintiff was 73 years old at the time she began working for Jo-Ann Stores, and 77 years old at the time of her termination. (Doc. 28, Pretrial Order).

4. Plaintiff was experienced in sewing and alterations. (Plaintiff Depo., Def. Exh. A, p. 9).

---

[1] The parties stipulated to a number of uncontroverted facts in the pre-trial order (Document 28), which have been adopted by the court for the purpose of this motion.

5. Stacie Harder, Store Team Leader, supervised Plaintiff from July 2005 until November 17, 2007. Ms. Harder was born in 1965 and was 41 years old at the time of Plaintiff's termination. (Doc. 28, Pretrial Order).

6. Plaintiff received and reviewed Jo-Ann Stores' employee handbook at the beginning of her employment. (Doc. 28, Pretrial Order).

7. The employee handbook states that Jo-Ann Stores "[p]rovide[s] equal opportunity and treatment of our Team Members without regard to race, color, age, gender, religion, national origin, disability, sexual orientation, veteran status, marital status or any other classification protected by applicable discrimination law." (Doc. 28, Pretrial Order).

8. As a Team Member, Plaintiff was responsible for "[c]reat[ing] an exceptional in-store experience that earns Guest loyalty and trust built upon reliability and respect for [Jo-Ann Stores'] Guests' time." Accordingly, Team Members are expected to [c]ommunicate[] professionally with other Team Members and Guests," and to "treat[] all Team Leaders, Team Members and Guests with dignity and respect." (Doc. 28, Pretrial Order).

9. Plaintiff understood that as a Jo-Ann Stores Team Member, it was important to meet the Company's standards for guest service, and to be courteous to Jo-Ann Stores guests and employees. (Doc. 28, Pretrial Order).

10. Plaintiff understood that she could be disciplined or terminated if she did not meet the Company's standards for guest service, if she was discourteous to Jo-Ann Stores guests and employees, and if she used inappropriate, offensive, or unprofessional language. (Doc. 28, Pretrial Order).

11. On May 17, 2007, Plaintiff broke her hip at work. (Doc. 28, Pretrial Order).

12. Plaintiff took paid workers' compensation leave from May 18, 2007 until August 12, 2007. (Doc. 28, Pretrial Order).

13. Plaintiff's physician, Dr. Johnson, released her to return to work with no restrictions effective August 13, 2007. (Doc. 28, Pretrial Order).

14. Plaintiff agreed with Dr. Johnson's decision to release her to full duty effective August 13, 2007. (Doc. 28, Pretrial Order).

15. No one at Jo-Ann Stores commented about plaintiff's hip injury after she returned to work, or questioned plaintiff about her release to return to work. (Doc. 28, Pretrial Order).

16. Since being released to return to work in August 2007, Plaintiff has not returned to Dr. Johnson, or received any further medical treatment for her hip. (Doc. 28, Pretrial Order).

17. Plaintiff considers herself "very independent." (Doc. 28, Pretrial Order).

18. Plaintiff prepares her own meals, runs her own errands, does her own grocery shopping, laundry, gardening and other yard work, exercises, and cleans her home. (Doc. 28, Pretrial Order).

19. Plaintiff does not require any assistance bathing, getting dressed, brushing her teeth, or driving. (Doc. 28, Pretrial Order).

20. During a workers' compensation hearing in June 2008, Plaintiff testified as follows:

> Q: In regard to your hip, how are you getting along in your day to day activities?
> A: Just pretty good, I have trouble getting up and down, but that's all. (Doc. 28, Pretrial Order).

21. Plaintiff returned to work on August 13, 2007. (Doc. 28, Pretrial Order).

22. Plaintiff was physically capable of performing all of her job requirements at Jo-Ann Stores as of August 13, 2007. (Doc. 28, Pretrial Order).

23. Plaintiff was able to perform her job duties, although she had to do some things differently after her hip replacement surgery. (Plaintiff Depo., Def. Exh. A, p. 43).

24. Plaintiff's medical condition did not hinder her from working for Jo-Ann Stores once she was released to return to work effective August 13, 2007. (Plaintiff Depo., Def. Exh. A, p. 44).

25. Plaintiff did not request an accommodation from Jo-Ann Stores after she returned to work effective August 13, 2007. (Doc. 28, Pretrial Order).

26. Plaintiff did not believe that she needed any help performing her job after she returned to work effective August 13, 2007. (Doc. 28, Pretrial Order).

27. Plaintiff is not aware of anyone at Jo-Ann Stores who believed she could not perform her job following her hip injury, or who believed her hip injury limited her ability to work at Jo-Ann Stores. (Doc. 28, Pretrial Order).

28. Plaintiff is not aware of anyone at Jo-Ann Stores who considered her to be disabled. (Doc. 28, Pretrial Order).

29. After Plaintiff returned to work, some of the younger employees would complete some of the tasks Plaintiff use to perform, such as lift heavy bolts of fabric. (Plaintiff Depo., Def. Exh. A, p. 91-93).

30. The day plaintiff returned to work, several Team Members complained to Merchandise Team Leader Saundra Maholland that Plaintiff was "short" when speaking with them in front of guests. (Doc. 28, Pretrial Order).

31. On August 13, 2007, Ms. Maholland spoke with plaintiff about being "short" with new Team Members in front of guests. (Doc. 28, Pretrial Order).

32. On or about August 20, 2007, Team Members and guests complained to Ms. Harder that Plaintiff was "discourteous" and "short" on the sales floor. (Declaration of Harder, Def. Exh. B).

33. On August 24, 2007, Ms. Harder issued plaintiff a verbal warning concerning the August 13 and 20, 2007 Team Member and guest complaints. (Doc. 28, Pretrial Order).

34. Ms. Harder counseled plaintiff about a guest complaint that occurred on September 17, 2007. (Doc. 28, Pretrial Order).

35. On September 22, 2007, Ms. Harder issued Plaintiff a written warning concerning a September 21, 2007 guest complaint. (Doc. 28, Pretrial Order).

36. On September 27, 2007, Carla Burgess, of Jo-Ann Stores' Team Member Relations Department, counseled Plaintiff about her referring to another Team Member as the "black lady." During the meeting, Ms. Burgess reminded plaintiff it was offensive to refer to a Team Member by skin color rather than by name. (Doc. 28, Pretrial Order).

37. On October 6, 2007, Ms. Harder reviewed Jo-Ann Stores' Equal Employment Opportunity / Anti-Harassment Policy with Plaintiff. (Doc. 28, Pretrial Order).

38. On October 25, 2007, Ms. Harder issued Plaintiff a final written warning for her customer service. The final written warning stated that "[a]ny further complaints by guests or [T]eam [M]embers will result in termination." (Doc. 28, Pretrial Order).

39. Ms. Harder discussed a November 10, 2007 complaint with plaintiff and again warned her "the next complaint would leave me no option but termination." (Doc. 28, Pretrial Order).

40. On November 17, 2007, Ms. Harder informed Plaintiff that her employment was

terminated, after a guest complained on November 16, 2007. (Doc. 28, Pretrial Order; Declaration of Harder, Def. Exh. B.).

41. Throughout her employment at Jo-Ann Stores, Plaintiff feels like she did a good job, and was very helpful to the customers. (Plaintiff Depo., Def. Exh. A, pp. 6, 54).

42. Jo-Ann Stores' Team Member Conduct Policy identifies several infractions for which Team Members may be disciplined or terminated, including:

> i. Failure to meet guest service standards; and
>
> ii. Discourtesy to a guest, member of management, or fellow Team Member, or displaying unbecoming behavior (including, but not limited to, making false, vicious, or malicious statements). (Doc. 28, Pretrial Order).

43. Plaintiff understood that she could be disciplined or terminated if she did not meet the Company's standards for guest service; if she was discourteous to Jo-Ann Stores guests and employees, and if she used inappropriate, offensive, or unprofessional language. (Plaintiff Depo., Def. Exh. A, p. 28-29).

44. Other Team Members have been terminated for guest complaints and for failure to comply with guest service policies, and these individuals did not have a workers' compensation injury, or any known medical impairments. (Doc. 28, Pretrial Order; Declaration of Harder, Def. Exh. B).

45. Plaintiff has no reason to believe that Jo-Ann Stores deviated from Company practice in the manner in which it disciplined her and terminated her employment. (Doc. 28, Pretrial Order).

46. Prior to her hip injury, Plaintiff did not feel that she was treated differently or

unfairly based on her age. (Doc. 28, Pretrial Order).

47. Neither Plaintiff's medical condition nor her age came up during the termination meeting. (Doc. 28, Pretrial Order).

48. However, after Plaintiff was terminated, and before she had left the termination meeting, Ms. Harder commented that "She hoped she would look as good as you do at her age." (Plaintiff Depo., Def. Exh. B, p. 79-80).

49. Prior to plaintiff's hip injury, Ms. Harder orally counseled her on at least five occasions about guest complaints. (Doc. 28, Pretrial Order).

50. On September 17, 2007, Ms. Harder hired Beatrice Jones as a Seasonal Team Member at the Salina Store. Ms. Jones was 70 years old at the time she began working for Jo-Ann Stores in 2007. (Doc. 28, Pretrial Order).

51. Plaintiff considered Ms. Harder a "fine" supervisor, and did not have any concerns with the manner in which Ms. Harder supervised her. Ms. Harder was friendly to Plaintiff throughout her employment by Jo-Ann Stores. (Doc. 28, Pretrial Order).

52. At all times relevant hereto, Defendant employed more than 500 employees. (Doc. 28, Pretrial Order).

53. Although Plaintiff felt that she was discriminated against during the last six weeks of her employment at Jo-Ann Stores, and reviewed Jo-Ann Stores' Equal Employment Opportunity / Anti-Harassment Policy with Ms. Harder during that same time period, she did not complain about discrimination while she worked at Jo-Ann Stores. (Doc. 28, Pretrial Order).

II. Jurisdiction

Subject matter jurisdiction is properly invoked under 28 U.S.C. § 1343.

III. Standard of Review

Summary judgment is appropriate when "the pleading, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. Wright v. Abbott Labs., Inc., 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. Faustin v. City & County of Denver, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. Allen v. Muskogee, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. Id.

The moving party bears the burden of showing the absence of any genuine issue of material fact. Celotex Corp. V. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may satisfy its burden by "pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).

IV. Discussion

1. ADA

The Plaintiff has alleged the Defendant terminated her employment in violation of the Americans with Disabilities Act. The ADA prohibits employment discrimination against any "qualified individual with a disability because of the disability." 42 U.S.C § 12112(a). Where there is no direct evidence of ADA discrimination, the analytical framework articulated in McDonnell Douglas Copr. v. Green, 411 U.S. 792, 802-06, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) controls the analysis. MacKenzie v. City and County of Denver, 414 F.3d 1266, 1274 (10th Cir. 2005). The plaintiff must first establish a prima facie case of discrimination, showing a genuine issue of material fact exists on each of three points: (1) the plaintiff is a disabled person as defined by the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) her employer discriminated against her because of her disability. Id. If the plaintiff establishes a prima facie case, "the burden shifts to the defendant to offer a legitimate nondiscrimatory reason for its employment decision. Should the defendant articulate a nondiscriminatory reason, the burden shifts back to the plaintiff to show a genuine issue of material fact as to whether defendant's reason for the discharge is pretextual." Id.

The ADA defines a "disability" as either (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). A plaintiff may establish an ADA disability under subsection (A) by showing the impairment and the major life activity it substantially limits. Doebele v. Sprint / United Mgmt.

9

Co., 342 F.3d 1117, 1129 (10th Cir. 2003), (quoting Poindexter v. Atchison, Topeka & Santa Fe Ry. Co., 168 F.3d 1228, 1232 (10th Cir. 1999)). An impairment is substantially limiting when it renders an individual either unable or significantly restricted in the ability to perform a major life activity compared to the average person. Id.

In 2008 the ADA was amended, which was effective January 1, 2009. However, since the conduct the Plaintiff complains of occurred in 2007, it is not necessary to consider the effect of the amendments. See Hennagir v. Utah Dep't of Corr., 587 F.3d 1255, 1261 n. 2 (10th Cir. 2009).

The Plaintiff must first show she is a disabled person as defined by the ADA. To be substantially limited in a major life activity, "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). The plaintiff must "articulate with precision" both her impairment and the major life activity it substantially limited. Doebele v. Sprint / Untied Mgmt. Co., 342 F.3d 1117, 1129 (10th Cir. 2003). Major life activities has been defined by the EEOC regulations as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. 29 C.F.R. § 1630.2. This list is not exhaustive. Kellogg v. Energy Safety Services Inc., 544 F.3d 1121, 1125 (10th Cir. 2008).

The Plaintiff alleges she is disabled due to her hip surgery and complications following the surgery. In support of her argument, the Plaintiff alleges that she is unable to dance, she cannot run, cannot jump up and down, cannot kneel, and she has trouble working in her water garden. She also states she cannot climb a ladder, cannot wash the outside windows on her

home, cannot put up her outside Christmas decorations, and has to take frequent breaks while vacuuming her house. She does state that there are activities that she could perform prior to her injury that she cannot perform now.

The evidence before the court shows the Plaintiff lives on her own, was able to work at least part time, perform household chores, cook her own meals, run errands, shop, garden, and clean her home. (Doc. 28). She does not require assistance in her daily life activities, and she testified to the workers compensation review board that she has trouble getting up and down, but that was all. Plaintiff testified in her deposition that since her hip injury, she hires someone to climb the ladder to remove limbs from her roof because she is afraid of falling off the ladder and hurting her hip. (Plaintiff Depo., Def. Exh. A, p. 37). She also hires someone to trim the hedges, a task she completed prior to her hip injury. (Plaintiff Depo., Def. Exh. A, p. 38-39). However, Sparks has not shown how her restrictions impair a major life activity.

The plaintiff can still establish an ADA disability if she can show that she was regarded as having an impairment. 42 U.S.C. § 12102(2)(C). To prevail on a regarded - as claim, a plaintiff must show that an employer mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or an employer mistakenly believes that an actual nonlimiting impairment substantially limits one or more major life activities. Sutton v. United Air Lines, Inc., 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

In support of the regarded-as claim, Sparks argues that Jo-Ann Stores prohibited her from lifting or climbing and that Jo-Ann Stores terminated her in fear that she might fall and hurt herself again. Sparks testified in her deposition that she can't climb ladders anymore. She did

not testify that her employer prohibited from climbing ladders, but that she did not climb on a ladder because she was scared of falling again.

Sparks was released to full duty by her doctor, and she agreed with the recommendation. (Doc. 28). She was not questioned regarding her injury or any restrictions once returning to work. (Doc. 28). Sparks agreed that she was capable of performing all of her job duties after returning to work, although she had to do some things differently. (Doc. 28). Plaintiff did not request accommodation from the Defendant once she returned to work. (Doc. 28). Most importantly, Plaintiff did not believe there was anyone at Jo-Ann stores that regarded her as disabled, or believed her hip injury limited her ability to work. The only evidence before the court that supports the Plaintiff's position is that Ms. Harder would have a younger person lift certain bolts of fabric. (Plaintiff Depo., Def. Exh. A, p. 93). However, the Plaintiff stated that she was not offended. More importantly, the younger person was the head of the department, and she knew how to drape the fabric better than the rest of the employees. (Plaintiff Depo., Def. Exh. A, p. 93).

The Plaintiff has not presented evidence that her hip injury substantially limited her ability to live on her own, work, or perform any other major life. The Plaintiff has not presented evidence that her employer regarded her as disabled. The evidence before the court does not does not establish genuine questions of material fact relating to her prima facie case of disability discrimination.

Even if the plaintiff could set forth sufficient evidence to show she was disabled, she still has not met the prima facie case of discrimination because she has not established her employer discriminated against her based on her disability. "No covered entity shall discriminate against a

qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The term "covered entity" means an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). 42 U.S.C. § 12112 identifies numerous different numerous situations which are considered as discrimination by a covered entity, including termination. The Plaintiff argues that she was terminated due to her disability. In support of this argument, she argues that she was fired under circumstances which give rise to an inference that her disability was a determinative factor in her termination. Sparks argues that the temporal proximity of her termination to her injury and her workers' compensation claim is sufficient to show discrimination. To establish a causal connection that her termination was based on her alleged disability, Sparks must provide evidence that her disability was a determining factor in the decision to termination her. Morgan v. Hiti, 108 F.3d 1319, 1323 (10th Cir. 1997). If an employee was terminated for reasons unrelated to a disability, then the plaintiff has not met the prima facie case. Bones v. Honeywell Intern., Inc., 366 F.3d 869, 878 (10th Cir. 2004), citing Foster v. Arthur Andersen, LLP, 168 F.3d 1029, 1033 (7th Cir. 1999). Sparks has not set forth evidence upon which the court can find her disability was a determining factor. Although Sparks was terminated three months after returning to work following her injury and her workers compensation claim, the evidence before the court shows that Plaintiff was counseled five times prior to her hip injury, and numerous times after her hip injury regarding her treatment of co-workers and guests. Sparks agreed that Jo-Ann stores complied with company policy in the manner in which she was disciplined and terminated.

13

Temporal proximity, without more, is insufficient for the court to find that Sparks was fired under circumstances which give rise to an inference that disability was a determining factor in termination. The Plaintiff has failed to make a prima facie case that she was terminated in violation of the ADA. The Defendant's motion for summary judgment on disability discrimination is granted.

2. Age Discrimination

Sparks does not have direct evidence of age discrimination. Therefore, the plaintiff must establish a prima facie case as set out in McDonnell Douglas Copr. v. Green, 411 U.S. 792, 802-06, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a prima facie case for age discrimination in termination cases, the plaintiff must prove that she was (1) within the protected class of individuals of 40 or older; (2) performed satisfactory work (3) terminated from employment; and (4) termination occurred under circumstances giving rise to an inference of discrimination. Hysten v. Burlington N. & Santa Fe Ry., 296 F.3d 1177, 1181 (10th Cir. 2002). Once the plaintiff establishes the prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. Id. at 1145. If the defendant meets the burden, the plaintiff must show either that the defendant's asserted reason was pretextual, or show that age was a determinative factor in the employment decision. Id. at 1145. "A plaintiff is not required to show that age was the sole motivating factor in the employment decision. Thus a plaintiff need not prove that the reasons offered by the defendant are false if he proves that age was also a reason, and that age was the factor that made a difference." EEOC v. Prudential Fed. Sav. & Loan Ass'n, 763 F.2d 1166, 1170 (10th Cir. 1985).

Sparks has met two of the four prongs of the prima facie case. Sparks was within the

protected class, as she was over 40 years of age, and she was terminated from her employment. However, a question remains as to whether Sparks was performing satisfactory work. Sparks claims she was, and at this stage Sparks need only provide "some evidence of good performance" to carry her burden. <u>Denison v. Swaco Geolograph Co.</u>, 941 F.2d 1416, 1420 (10th Cir. 1990). Even if the court was to conclude that Sparks was performing satisfactory work, and assuming she could establish she was terminated under circumstances giving rise to an inference of discrimination to established a prima facie case, Sparks has failed to show a genuine issue of material fact suggesting the stated nondiscriminatory reasons for termination was pretextual. The evidence before the court is that prior to her leave for her hip injury, Sparks was disciplined five times for her treatment of co-workers and store customers. After her return, she was disciplined numerous times for the same conduct. Although Sparks testified she was doing a good job, and that she had knowledge regarding sewing that the customers appreciated, the disciplinary actions of Jo-Ann Stores show that there was a legitimate, nondiscriminatory reason for termination. Sparks' arguments fail to raise a factual question whether Jo-Ann Stores explanation for termination was a pretext for discrimination. Sparks must do more than challenge the employer's employment decision based on poor performance review or disciplinary actions. See <u>Fallis v. Kerr-mcGee Corp.</u>, 944 F.2d 743, 747 (10th Cir. 1991). Furthermore, it is the manager's perception of the employee's performance that is relevant, no the plaintiff's subjective evaluation. <u>Furr v. Seagate Tech., Inc.</u>, 82 F.3d 980, 988 (10th Cir. 1996). Sparks has filed to raise a genuine issue that Jo-Ann Stores' reason for termination was a pretext for age discrimination. Defendant motion for summary judgment on Plaintiff's age discrimination claim is granted.

V.  Conclusion

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (Doc. 23)  be GRANTED  in accordance with the above rulings.

IT IS ORDERED that the plaintiff Isabel Sparks recover nothing, the action be dismissed on the merits, and the defendant Jo-Ann Stores, Inc. recover its costs of action from the plaintiff.

SO ORDERED this 11th day of August, 2010.

    s/ Wesley E. Brown
Wesley E. Brown
U.S. Senior District Judge